## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

FAMILY FIRST LIFE, LLC,

               Plaintiff,

    v.

DAVID RUTSTEIN, a/k/a DAVID
GORDON a/k/a BOB GORDON, a/k/a    Case No. _____
NATE GOLDEN; MINDY RUTSTEIN; and
the NATIONAL ASSOCIATION OF
ACCREDITED INSURANCE
PROFESSIONALS

               Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Family First Life, LLC (FFL) brings this action to stop Defendants David Rutstein, Mindy Rutstein, and the National Association of Accredited Insurance Professionals (NAAIP), from continuing their campaign of unlawful competition and disparagement against it. Federal and Florida law do not permit competitors to lie or engage in deceptive practices. Yet, the Defendants continue to do just that. Making matters worse, the Defendants are not allowed to participate in the insurance industry at all. Per a Consent Order issued by the Florida Department of Financial Services against Defendant David Rutstein, he is permanently barred from participating in the insurance industry. Additionally, Florida law bars all three Defendants from participating in the insurance industry because they do not have licenses. FFL thus brings this Complaint and alleges as follows:

## THE PARTIES

1.      Plaintiff FFL is a Delaware limited liability company with its principal place of business in Uncasville, Connecticut.

2.      Defendant David Rutstein resides in Jerusalem, Israel, but at times (including times material to the allegations stated herein) has purported to live in Boca Raton, Florida.  Mr. Rutstein has several aliases including David Gordon, Bob Gordon, and Nate Golden.

3.      Defendant David Rutstein is the owner and operator of Defendant NAAIP.  NAAIP is not incorporated, but its social media accounts have listed both Jerusalem, Israel and Boca Raton, Florida as its headquarters.

4.      On information and belief, Defendant Mindy Rutstein resides in Jerusalem, Israel and/or in Boca Raton, Florida, and either actively participates in the operations of NAAIP or otherwise allows Mr. Rutstein and NAAIP to use her name, image, and likeness to operate NAAIP.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332, 1367 and 15 U.S.C. § 1121.  FFL's Lanham Act claims give rise to jurisdiction under 28 U.S.C. § 1331 and, independently, under 15 U.S.C. § 1121. This Court independently has jurisdiction to consider the state law claims under 28 U.S.C. § 1367.  This Court also has jurisdiction under 28 U.S.C. §§ 1331 and 1332 because the parties are citizens of different States and/or countries (¶¶ 1–4, *supra*), and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs (¶¶ 60–95, *infra*).

2

6. Defendants are subject to specific personal jurisdiction in Florida under Florida's long-arm statute, § 48.193(1)(a)(2), Fla. Stat. Defendants personally or through an agent committed tortious acts within Florida such as libel, defamation, tortious interference with business relationships, unfair competition and deceptive practices, and the Defendants' contacts with Florida are sufficient to satisfy the Due Process Clause. The claims herein arise from this tortious activity. Alternatively, Defendants are subject to general jurisdiction in Florida because Defendants are engaged in substantial activity in Florida. *Id.* § 48.193(1)(b)(2). Defendants have maintained continuous and systemic contacts with Florida irrespective of the claims asserted herein.

7. Venue is proper in this District under 28 U.S.C. § 1391. Parts of the events giving rise to these claims occurred in this District, and Defendants are subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

### A.   FFL's Business Model

8. FFL operates as an independent marketing organization (IMO) that serves as a liaison between licensed independent contractor insurance agents (Agents) and insurance carriers.

9. IMOs (including FFL) offer resources including, but not limited to, training, marketing, contracting, and recruiting to Agents. Those resources, among others, allow the Agents to build their own agencies and businesses.

10. As is common in the IMO industry, many of the Agents that affiliate with an IMO form their own companies and recruit other Agents. The IMO serves as

an "upline" to the Agents that affiliate with it.  If an Agent recruits another Agent, the recruit becomes part of the IMO's and the recruiting Agent's "downline."

11.    This "upline/downline" model is common in the insurance industry because it offers several benefits including, for example, the ease of contracting with carriers, access to more carriers, and greater choices in coverage.

12.    Moreover, when an Agent sells an insurance policy to a customer, the insurance carrier pays a commission to the writing Agent and any Agent in his/her upline including the IMO.

13.    IMOs and Agents use a number of marketing tools (including social media platforms) to engage with other industry professionals and to encourage them to consider affiliating with the IMO and/or its Agents.

14.    FFL and its Agents follow this same model.

15.    Because FFL does not underwrite any insurance directly, its relationships with the insurance carriers and Agents are crucial to its business. Likewise, its reputation in the insurance industry is instrumental for it to maintain strong business relationships with its insurance carriers and Agents.

16.    Like other IMOs and their Agents, FFL and its Agents use social media platforms to encourage them to consider affiliating with FFL and/or its Agents.

**B.    Defendants' Illegal Business Model**

17.    David Rutstein is a former licensed insurance agent who is no stranger to administrative agencies and federal courts in this State.

18.     At one time, Mr. Rutstein held insurance licenses in 40 different states, including in Florida.  But starting in 2010, insurance regulators began terminating or refusing to renew Mr. Rutstein's licenses.

19.     On February 14, 2012, Florida's Department of Financial Services issued an Administrative Complaint alleging that Mr. Rutstein aided or represented an unauthorized insurer in transactions and that he misappropriated approximately $200,000 in consumer funds in the form of commissions received for nonexistent insurance products.[1]

20.     On April 19, 2012, Mr. Rutstein agreed and stipulated to a Consent Order (Case No. 115256-11-AG) to resolve these allegations.  The Consent Order revoked his Florida insurance license, immediately and permanently removed and banned him from any and all direct or indirect participation in and/or affiliation with any entity which is licensed or regulated under the Florida Insurance Code, or "any individual or entity which is otherwise involved in the business or transaction of insurance."[2]

21.     In 2010, prior to the Consent Order barring Mr. Rutstein from involvement in the business of insurance, he founded NAAIP and held himself out in the industry business as NAAIP.

---

[1] Declaration of Drew Bell (Bell Decl.) ¶ 4; Ex. A (*In the Matter of David Brian Rutstein*, Case No. 115256-11-AG, Settlement Stipulation for Consent Order ("Consent Order")).

[2] *Id.* ¶ 9(c).

22.    The Consent Order clearly barred Mr. Rutstein from continuing his affiliation with NAAIP and/or from further engagement with the insurance business. Nevertheless, Mr. Rutstein still owns and operates NAAIP, albeit under a variety of false names.

23.    Five years after the Consent Order was entered, NAAIP and Mr. Rutstein were the subject of a trade secrets case that was tried in front of Magistrate Judge Hopkins of the Southern District of Florida from October 3–6, 2017.[3] Judge Hopkins generated several findings illustrating that NAAIP and Mr. Rutstein are alter egos that are still "involved in the business or transaction of insurance."

24.    As Judge Hopkins found: (1) Mr. Rutstein founded NAAIP in 2010 but it "is not a real entity, charity, not-for-profit, or trade association, and is not incorporated anywhere"; (2) Mr. Rutstein admitted to lying when, at a deposition, he disclaimed his involvement with NAAIP after April 19, 2012; (3) during the trial in 2017, Mr. Rutstein admitted that he was still involved in NAAIP including by sending and receiving emails from the david@naaip.org email account; (4) Mr. Rutstein's son, Binyomin, admitted that he authorized people to use his insurance licenses in connection with the operation and marketing of NAAIP to insurance Agents; (5) the "concept" of NAAIP is to "provide an automated process for giving free websites to insurance agents using a simple website template" and offering access to a "Life Insurance Quote Engine," which can "return a list of quotes for term life insurance

---

[3] *Compulife Software, Inc. v. Rutstein*, 2018 WL 11033483 (S.D. Fla. Mar. 12, 2018), *aff'd in part and vacated in part Compulife Software, Inc. v. Newman*, 959 F.3d 1288 (11th Cir. 2020).

policies"; and (6) Mr. Rutstein also operates a website that generates and sells leads to insurance Agents.[4]

25.     In the years since the Consent Order, Mr. Rutstein has blatantly violated it through his continued participation in NAAIP, daily phone calls to Agents, and social media posts filled with "advice" to Agents.

26.     NAAIP now purports to have more than 14,000 registered members.

27.     On information and belief, NAAIP remains Mr. Rutstein's alter ego, and it is not a real entity, charity, not-for-profit, or trade association.   Nor is it incorporated anywhere.

28.     Nevertheless, NAAIP still maintains a public website that purports to provide website templates to insurance Agents.

29.     Mr. Rutstein still uses the same NAAIP-hosted email address (david@naaip.com).

30.     NAAIP has also increased its offerings and now openly advertises itself as an IMO.[5]

31.     NAAIP's website states that Agents have "the option to sell insurance products with NAAIP as the upline."[6]

---

[4] *Id*. at *7-8.

[5] Bell Decl. ¶ 5; Ex. B (Mindy post).

[6] https://www.naaip.org/

32.     NAAIP's website also hosts a daily video conference that takes place from Monday to Thursday at noon and on the weekends at 2 pm ET.[7] David Rutstein is always the presenter.  He spends the conference giving bad advice to insurance Agents, aggressively pushing insurance products, and disparaging other IMOs, especially FFL.

33.     NAAIP also has numerous social media accounts, including on Facebook, YouTube, Twitter, and LinkedIn,[8] some of which state that that NAAIP "specializes in leads, selling systems and helping agents make money."[9]

34.     Mr. Rutstein's daughter, Mindy Rutstein, is purportedly an employee of NAAIP, but it is possible that Mr. Rutstein is simply pretending to be his daughter to evade the Consent Order.

35.     Mindy Rutstein or someone with the handle "Mindy Rutstein" uses several accounts on social media platforms to state that she is employed with NAAIP, albeit in different capacities.  A Facebook account associated with "Mindy Rutstein" states that she is "an Insurance Consultant at naaip.org"[10] A LinkedIn account lists "Mindy Rutstein" as a "Marketing Manager at NAAIP."[11]

---

[7] *Id*.

[8] https://www.youtube.com/c/NaaipOrg/channels; https://twitter.com/naaipagents; https://twitter.com/naaiporg?lang=en; https://www.linkedin.com/company/naaip/org/; https://www.facebook.com/naaip.org.

[9] Bell Decl. ¶ 6; Ex. C (https://www.facebook.com/groups/naaipagents).

[10] Bell Decl. ¶ 7; Ex. D (https://www.facebook.com/mindy.rutstein.50).

[11] Bell Decl. ¶ 8; Ex. E (https://www.linkedin.com/in/mindy-rutstein/).

36.     On information and belief, these accounts belong either to Mindy Rutstein or David Rutstein.  Mr. Rutstein routinely posts live videos of himself using the "Mindy Rutstein" Facebook account.

37.     Neither David Rutstein nor Mindy Rutstein has any sort of license to engage in any insurance-related activities in Florida.

**C.     Examples of Defendants' Unfair and Deceptive Business Practices**

38.     Defendants engage in several deceptive and unfair practices to attempt to recruit Agents away from FFL and to otherwise harm FFL.  These means involve at least (1) a daily video call disparaging FFL (*supra* ¶¶ 32, *infra* ¶¶ 39–40, 50); (2) aggressive emails to FFL's Agents (*infra* ¶¶ 42–43); (3) an outrageous and deceptive scheme on social media in which Defendants—including, but not limited to, Mr. Rutstein and NAAIP—pretend to be different people by using aliases including "Mindy Rutstein"  to spread lies about FFL (*supra* ¶¶ 34–36, *infra* ¶¶ 45–49); and (4) fake online reviews (*infra* ¶ 52).

39.     Defendants spend a substantial amount of time on the NAAIP daily video call disparaging FFL.  In at least one of these videos, Mr. Rutstein rants about FFL and falsely claims:  (1) FFL does not "offer the right contacts"; (2) new Agents join FFL to "become victims"; (3) FFL said "these new agents are so dumb we can lie to them and we can steal from them"; (4) FFL is "lying about a lot of stuff"; (5) FFL is a "fraudster marketing company"; and (6) FFL is a "fraud IMO."

40.     On these calls, Mr. Rutstein often encourages Agents to leave FFL and associate with NAAIP instead.  His talking points and alleged reasoning for

encouraging an Agent to leave FFL are all based on false statements and misinformation that he knows is untrue.

41.     Defendants also attempt to poach FFL Agents through direct solicitation.  For example, in February 2022, Mr. Rutstein, under the alias "David Gordon," began to directly email and message FFL Agents lies about FFL and encouraged them to work with NAAIP instead.

42.     By way of example only, in February 2022, Mr. Rutstein emailed a number of FFL Agents including Meighan Adams, Laban Matthew Spalding, and Kevin Goodnight claiming that FFL was a "white-collar con job."[12]  In these emails, Mr. Rutstein repeated many of the falsehoods contained in his and Defendants' videos and social media posts.  He also pitched NAAIP and its resources to these Agents, in an attempt to convince them to join his IMO.  Mr. Rutstein promised that working with him would help these Agents "[s]tay [i]n [b]usiness."

43.     Mr. Rutstein has sent and continues to send the same or similar emails to multiple FFL Agents.

44.     Mr. Rutstein uses these emails and social media posts and comments to poach FFL Agents.

45.     In January and February 2022, Mr. Rutstein and "Mindy Rutstein" made multiple social media posts and comments spreading falsehoods about FFL. These falsehoods were then disseminated by NAAIP's and "Mindy's" social media

---

[12]     Bell Decl. ¶ 9; Ex. F (email to M. Adams, L. Matthew Spalding, and K. Goodnight).

accounts on these and other social media platforms.[13]  Some of the posts targeted Agents specifically through social media groups dedicated to them like the Insurance Forum.

46.    Defendants contend that "Mindy" is a former FFL Agent (which is not true) but is now dedicated to being an "FFL Killer" and "assist[s] [d]efrauded agents" at FFL to "[a]ttain [l]egal remedies."[14]

47.    By way of example only, these false statements include that FFL has (1) "been defrauding new insurance agents for years"; (2) is a "criminal organization;" (3) engages in "high pressure[]" tactics to convince Agents to "fork over thousands of dollars for bogus leads" that are recycled; (4) "hires social media writers" to spread false information;  (5) "hurts tens of thousands of agents and tens of thousands of families;" (6) "blasts the internet with blatant lies;" and (7) "pushes agents to sell the absolutely worst deal in the industry." [15]

48.    These false statements represent only a small portion of the false statements that Mr. Rutstein and "Mindy" have posted on a variety of social media platforms in the last few months.

49.    Through various social media accounts, "Mindy Rutstein" has also encouraged people to sue FFL for fraud, explaining that she "has been in consultation

---

[13]    Bell  Decl.   ¶ 10;  Ex.   G  (collective  statements) (https://www.facebook.com/naaip.org; https://twitter.com/naaipagents).

[14] Ex. E (Mindy LinkedIn bio); Ex. G (collective statements).

[15]    Ex.   G   (collective   statements) (https://www.facebook.com/groups/349604499193866/).

with class action attorneys that cannot believe how easy this case is"; this is a "slam dunk case"; and, in fact, lawsuits are already "starting."[16]

50.    Mr. Rutstein has spread similar lies on his daily video call and in emails to Agents.

51.    No lawsuit has been filed against FFL for fraud.

52.    NAAIP also engages in unfair and deceptive practices by listing fake reviews of people who purport to work with it.  On information and belief, these reviews are not real, and were authored by one of the Defendants.

### D.    These Unfair and Deceptive Tactics Have Caused Harm to FFL and Will Continue to Cause Harm Unless Stopped

53.    Numerous industry professionals—including FFL Agents, Agents from other IMOs, insurance carriers and potential future Agents—have seen or heard Defendants' false statements and disparagement.

54.    The campaign of harassment detailed in ¶¶ 38–50 harms FFL's business.  Defendants have and continue to paint FFL to be a "criminal organization," and "fraudsters" damaging its reputation in the eyes of insurance carriers, current Agents, potential new Agents, and other industry professionals.

55.    FFL and its Agents have had to defend themselves from Defendants' lies and routinely must explain to other Agents, recruits, and insurance carriers that Defendants' statements are false and malicious.

---

[16]          Ex.          G          (collective          statements)
(https://www.facebook.com/groups/246959460995/user/100046072960854/).

Case 9:22-cv-80243-AMC   Document 1   Entered on FLSD Docket 02/15/2022   Page 13 of 18

56.     On information and belief, many of Defendants lies have caused FFL Agents to leave the Company altogether or to pursue support at other IMOs at the expense of FFL.

57.     On information and belief, many of Defendants' lies have also discouraged new Agents or potential recruits from affiliating with FFL.

58.     FFL has also lost money and resources as a direct result of Defendants' harassment campaign because it has had to spend time and money (1) hiring lawyers to respond and (2) setting the record straight.

59.     Defendants will not stop unless this Court stops them.  On February 7, 2021, undersigned counsel for FFL sent Mr. Rutstein a cease-and-desist letter.  In one of his recent daily video calls, Mr. Rutstein announced that he had no intention of ceasing and desisting and continued to disparage FFL in that same call.

## COUNT I

### Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), §§ 501.203(8), 501.204(1), Fla. Stat.

60.     FFL incorporates and realleges ¶¶ 1 through 59 above as if fully set forth herein.

61.     FDUTPA forbids "unfair or deceptive acts or practices in the conduct of any trade or commerce."  §§ 501.203(8), 501.204(1), Fla. Stat.

62.     Defendants' unfair and deceptive practices are designed to solicit new business for NAAIP from current and prospective FFL Agents.  § 501.203(8), Fla. Stat. (defining "trade or commerce" as "soliciting").

63.     Defendants' unfair and deceptive practices are likely to and have misled current and potential FFL Agents into believing that FFL's business practices are criminal and fraudulent, and that NAAIP's business practices are ethical and compliant.

64.     On information and belief, Defendants' deceptive and unfair practices have caused current FFL Agents to join NAAIP and/or end their business affiliation with FFL.

65.     To counteract Defendants' misinformation campaign, FFL has paid for legal representation and has spent resources on setting the record straight.

66.     Defendants' unlawful actions have harmed and continue to harm FFL.

## COUNT II

## Common law unfair competition

67.     FFL incorporates and realleges ¶¶ 1 through 66 above as if fully set forth herein.

68.     Florida's common law of unfair competition is an umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.

69.     Demonstrated by his repeated attempts to poach FFL Agents, David competes with FFL for the same new IMO Agents.

70.     Defendants' deceptive and unfair practices are contrary to honest practices in commercial matters.  Defendants lack a license to participate in the

insurance industry and Defendant Rutstein is permanently barred from participating in it.

71.     Defendants' fake reviews and disparagement against FFL is also contrary to honest practices in commercial matters.

72.     Defendants' unlawful actions have harmed and continue to harm FFL.

## COUNT III

### Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)

73.     FFL incorporates and realleges ¶¶ 1 through 72 above as if fully set forth herein.

74.     The Lanham Act prohibits in interstate commerce the use of false and misleading statements of fact in commercial advertisements or promotion that deceive or are likely to deceive in a material way and have caused or are likely to cause competitive or commercial injury to the plaintiff.  15 U.S.C. § 1125(a)(1)(B).

75.     Defendants have made false and misleading statements of fact in videos, in social media posts, and in emails, against FFL while promoting their services.

76.     Defendants' statements deceive and are likely to deceive current and potential FFL Agents into believing that FFL is not a place they should affiliate with.

77.     Defendants' statements have caused and are likely to cause competitive and commercial injury to FFL.

78.     On information and belief, these Defendants' statements discouraged potential Agents from joining FFL and encouraged current FFL Agents to defect away from FFL to FFL's financial detriment.

79.     Defendants' statements against FFL have diminished FFL's brand and reputation.

80.     Defendants' unlawful actions have harmed and continue to harm FFL.

## COUNT IV

### Tortious interference with business relationships

81.     FFL incorporates and realleges ¶¶ 1 through 80 above as if fully set forth herein.

82.     Florida law forbids tortious interference with prospective and current business relationships.

83.     A business relationship forms every time an independent agent works with FFL.  Defendants, having been in the insurance industry for decades, knew about these business relationships.

84.     Defendants purposefully and unjustly disrupted or interfered with these relationships through their deceptive and unfair practices.  By way of example only, Defendants intentionally and unjustifiably interfered with FFL's relationship with Meighan Adams, L. Matthew Spalding, and Kevin Goodnight by sending misleading and false messages to them, in an attempt to recruit them away from FFL to NAAIP. Defendants have sent the same or similar emails or messages to likely hundreds of FFL Agents.

85.     As a direct result of the disruption, FFL was damaged.  Defendants' deceptive and unfair practices have injured FFL by depriving FFL Agents of time

spent working on their business and recruiting new Agents, resulting in lost profits to FFL.

86.     Likewise, because of these practices, FFL has been forced to spend money on remediation including on defending itself against Defendants' lies.

## COUNT V
## Libel per se and Defamation

87.     FFL incorporates and realleges ¶¶ 1 through 86 above as if fully set forth herein.

88.     Under Florida law, libel per se forbids publishing false information about a company if it tends to injure a company in its trade or profession.

89.     Florida also recognizes the common law tort of defamation, which forbids publishing false statements as well.

90.     The false statements discussed in ¶¶ 39–50 constitute libel per se because they were published on public social media platforms and in emails, contained false information, and tend to injure FFL in the insurance industry.

91.     The false statements also constitute defamation because they falsely disparage FFL's business and ethics.

92.     On information and belief, Defendants intended to spread falsehoods about FFL, or at the very least, were negligent to the possibility that their statements were false.

93.     On information and belief, Defendants intend to divert Agents from FFL to NAAIP.

94.     The false statements have undermined FFL's ability to recruit, train, and support current and future Agents.

95.     The false statements have caused and will cause FFL to lose business. On information and belief, the false statements have caused FFL Agents to leave the company and prevented new Agents from joining FFL.

**REQUEST FOR RELIEF**

FFL respectfully requests that the Court enter judgment in its favor and grant the following relief:

1.     An order enjoining the Defendants from making false and defamatory statements about FFL;

2.     An order requiring Defendants to permanently delete all comments, posts, videos, and media that disparage FFL;

3.     An order enjoining the Defendants from sending false and defamatory emails, messages or other communications to insurance Agents;

4.     An order awarding FFL actual, punitive, and compensatory damages, as well as reasonable costs and attorney's fees; and

5.     Any other relief the Court deems just and equitable.

Date: February 15, 2022                    Respectfully submitted,

*/s/ Drew T. Bell*
Drew T. Bell
Florida Bar No. 120435
E-mail: @kslaw.com
KING & SPALDING LLP

*Attorney for Plaintiff Family First Life, LLC*