UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-80243-CIV-CANNON

**FAMILY FIRST LIFE, LLC**,

    Plaintiff,

v.

**DAVID RUTSTEIN**, **MINDY RUTSTEIN**,
and **NATIONAL ASSOCIATION OF ACCREDITED
INSURANCE PROFESSIONALS**,

    Defendants.
_____/

**OMNIBUS ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS TO DAMAGES, GRANTING AMENDED MOTION TO SEAL, AND DENYING MOTION FOR ORDER TO SHOW CAUSE ON CRIMINAL CONTEMPT**

**THIS CAUSE** comes before the Court on Plaintiff's Motion for Default Judgment as to Damages [ECF Nos. 189, 194], Plaintiff's Motion for Order to Show Cause as to Why Defendant David Rutstein[1] Should Not Be Held in Criminal Contempt [ECF No. 211], and Plaintiff's Amended Motion to Seal Certain Portions of Plaintiff's Motion for Default Judgment as to Damages [ECF No. 219]. The Court held a hearing on the Motions on June 29, 2023 [ECF No. 216].[2] The Court has considered the Motions [ECF Nos. 189, 194, 211, 219], the full

---

[1] Mr. Rutstein uses many aliases, including David Gordon, Bob Gordon, Nate Golden, Binyomin Rutstein (his son), Jonathan Meir, and Aaron Levy. All references to David Rutstein contained in this Order encompass these and any other of Mr. Rutstein's aliases.

[2] In addition to addressing Plaintiff's Motion for Default Judgment as to Damages and Plaintiff's Motion for an Order to Show Cause, the hearing addressed Plaintiff's initial motion to seal [ECF No. 188]. In an order following the hearing, the Court ordered Plaintiff to, among other things, "file a supplemental memorandum stating with specificity the portions of its Motion for Default Judgment as to Damages and its corresponding exhibits that should continue to be shielded from public view" [ECF No. 217 p. 1]. Pursuant to that order, Plaintiff filed the instant Amended Motion to Seal [ECF No. 219].

record, and is otherwise advised in the premises. For the following reasons, Plaintiff's Motion for Default Judgment as to Damages [ECF Nos. 189, 194] is **GRANTED IN PART**;[3] Plaintiff's Amended Motion to Seal [ECF No. 219] is **GRANTED**; Plaintiff's Motion for an Order to Show Cause as to why Defendant David Rutstein Should Not Be Held in Criminal Contempt [ECF No. 211] is **DENIED**. The court also enters an amended permanent injunction in accordance with this Order.[4]

## BACKGROUND

The factual and procedural background of this case is laid out in detail in the Court's Order Granting in Part Plaintiff's Motion for Default Judgment [ECF No. 165]. The factual and procedural background from that Order [ECF No. 165 pp. 3–15] is incorporated by reference herein. In that Order, the Court entered default judgment as to liability against Defendants David Rutstein, Mindy Rutstein, and National Association of Accredited Insurance Professionals ("NAAIP") (collectively "Defaulting Defendants") on the following counts in Plaintiff's Third Amended Complaint ("TAC"):

- Count I – Violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)
- Count III – Common Law Unfair Competition
- Count IV – Tortious Interference with Business Relationships
- Count V – Libel Per Se and Defamation

---

[3] The Court denies as moot Plaintiff's Motion for Default Judgment as to the Damages to the extent it requests attorneys' fees as the prevailing party. After the hearing on the instant motions, Plaintiff filed an Amended Motion for Attorneys' Fees [ECF No. 221], which the Court referred to Judge Bruce Reinhart for a Report and Recommendation [ECF No. 223].

[4] The permanent injunction issued herein supersedes the permanent injunction entered on January 27, 2023 [ECF No. 165].

[ECF No. 165 pp. 15–24].  While the Court determined Defendants' liability on these counts, the Court did not determine damages at that juncture [ECF No. 165 p. 15].  Instead, the Court retained jurisdiction to determine damages and ordered Plaintiff to file the instant Motion for Default Judgment as to Damages [ECF No. 165 p. 26].

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure affords the Court discretion to take appropriate steps when considering a motion for default judgment in order to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.  Fed. R. Civ. P. 55(b)(2).  Although the well-pled allegations in a complaint relating to liability are taken as true upon default, "those relating to the amount of damages suffered ordinarily are not."  *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012) (citing *United States v. DiMucci*, 879 F.2d 1488, 1497 (7th Cir. 1989)).  Accordingly, district courts have "a wide scope of discretion to determine the proper relief due an injured party."  *Burger King Corp. v. Mason*, 855 F.2d 779, 791 (11th Cir. 1988).

The Lanham Act provides that a prevailing plaintiff "shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117.  "This recovery is cumulative, that is, the Court may award [a plaintiff] its damages and [the defendant's] profits."  *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1182 (11th Cir. 1994).

### I. Damages

Plaintiff seeks a damages award in the amount of $5,299,519 trebled to $15,898,557 against Defendants David Rutstein and NAAIP [ECF No. 194 pp. 9–16].  Plaintiff does not seek a damages award from Defendant Mindy Rutstein [ECF No. 194 p. 1].  Upon review of the guiding legal

principles and Plaintiff's evidence, the Court determines that such an award is appropriate in the present case.

Under the Lanham Act, "damages may be awarded even when they are not susceptible to precise calculations." *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1564 (11th Cir. 1986). "Where, [as here], the wrong is of such a nature as to preclude exact ascertainment of the amount of damages, plaintiff may recover upon a showing of the extent of damages as a matter of just and reasonable inference, although the result may be only an approximation." *Id.* (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931)). Here, Plaintiff has shown that $5,299,519 is a reasonable approximation of its actual damages in the form of lost profits.

According to the report by Plaintiff's marketing expert (the "Harper Report"), a company's corporate reputation can account for between 70% and 80% of a company's market value [ECF No. 194-48 ¶ 109–113]. *See also Safari Programs, Inc. v. CollectA Int'l Ltd.*, No. 15-CV-20263, 2018 WL 3730894, at *2 (S.D. Fla. Apr. 16, 2018), *report and recommendation adopted*, 2018 WL 3730220 (S.D. Fla. May 1, 2018) (noting in a Lanham Act case, actual damages include "damages to [a company's] goodwill and reputation"). And—as Defendant David Rutstein admitted at a prior hearing and as discussed in the Court's Order Granting in Part Plaintiff's Motion for Default Judgment—Mr. Rutstein's campaign was initiated with the goal of harming Family First Life, LLC's reputation [*see* ECF No. 165 p. 19]. Based on the Harper Report and Plaintiff's historical revenue, expenses, and profit data, Plaintiff's accounting expert produced a report (the "Pearce Report") estimating the amount of lost profits that Plaintiff has suffered because of Mr. Rutstein's campaign [ECF No. 194-49]. By utilizing Plaintiff's historical data, Pearce was able to conduct a linear regression analysis to predict the profits Plaintiff could have expected to earn

through February 2023 had Mr. Rutstein not engaged in his wrongful campaign [ECF No. 194-49 ¶¶ 27–54]. Pearce then subtracted Plaintiff's actual profits from the expected profits and determined that Mr. Rutstein's actions caused Plaintiff to lose $5,299,519 in profits [ECF No. 194-49 ¶ 55]. Based on the methods utilized in coming to this figure, the Court determines that $5,299,519 is a reasonable approximation of Plaintiff's lost profits resulting from Mr. Rutstein's conduct.

With it established that $5,299,519 is a reasonable approximation of Plaintiff's actual damages, the Court exercises its broad discretion under the Lanham Act to treble this amount to $15,898,557. *See* 15 U.S.C. § 1117(a) ("In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."). Courts often treble damages where, as here, a defendant acted willfully. *See, e.g.*, *Stockwire Rsch. Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1268 (S.D. Fla. 2008); *Sprint Sols., Inc. v. Connections Digital, LLC*, 142 F. Supp. 3d 1355, 1358 (N.D. Ga. 2015). As previously discussed, Mr. Rutstein freely admitted that his actions were willful and done with the intention of harming Plaintiff [ECF No. 165 p. 19; ECF No. 45 (minute entry for hearing on December 20, 2022)]. Furthermore, the voluminous record clearly shows that Mr. Rutstein's actions were willful, evidenced by his continual defiance of the Court's injunction orders and his attempts to excuse his behavior as somehow justified [ECF Nos. 119, 138, 164–165, 169, 198, 210, 213]. Indeed, as the Court previously noted in a prior Order [ECF No. 138 p. 3], Mr. Rutstein brazenly admitted to continuing to post insurance related videos and conducting insurance related activities despite the Court enjoining him from such conduct [ECF No. 128]. Accordingly, Plaintiff is entitled to trebled damages in the amount of $15,898,557.

## II.     Civil Contempt and Criminal Contempt

On January 13, 2023, the Court held Defendant David Rutstein in Civil Contempt for continuing to violate the Court's preliminary injunction order [ECF No. 158]. The Court determined that any future violations of the preliminary injunction order would result in David Rutstein being liable for a $200 per day fine (including holidays and weekends) [ECF No. 158 p. 12]. Plaintiff has provided substantial evidence showing that Mr. Rutstein continued to violate the preliminary injunction order while it was in effect and is presently violating the permanent injunction [ECF Nos. 164, 169, 210]. On that basis, Plaintiff requests an award of civil contempt sanctions for Mr. Rutstein's continued violations. Indeed, as recently as August 2, 2023, Mr. Rutstein has admitted to continuing to violate the permanent injunction by, among other things, continuing to post content on and operate the NAAIP website [ECF No. 225]. 217 days have lapsed since the Court granted Plaintiff's Motion for Civil Contempt. Accordingly, the Court awards Plaintiff sanctions in the amount of $43,400.

Because Mr. Rutstein has continued to violate the Court's permanent injunction, Plaintiff also seeks an order requiring Mr. Rutstein to show cause as to why he should not be held in criminal contempt [ECF No. 211]. As discussed at the hearing on the instant motions [ECF No. 216], the Court hesitates to walk down that path at this juncture. Up to this point, Mr. Rutstein has not faced any tangible consequences for his actions subsequent to the Court's civil contempt order on January 13, 2023 [ECF No. 158]. This Order imposes substantial civil sanctions on Mr. Rutstein for his continual non-compliance in the amount of $43,400, and Plaintiff remains in the process of attempting to effectuate the removal of Mr. Rutstein's online materials through this Court's orders, including this one. Furthermore, while the Court accepted as true the allegations regarding the falsity of Mr. Rutstein's statements about Plaintiff for the purposes of entering default judgment

on the libel per se and defamation claim (Count V) [ECF No. 165]—and while the factual record supports Plaintiff's position on the falsity of Mr. Rutstein's claims—the Court is mindful of the possible First Amendment implications associated at least partially with some of Mr. Rutstein's statements about Plaintiff. This too adds an additional layer of complication to the criminal contempt analysis. And then finally, the utility of an order to show cause is dubious at best given the unique and practical circumstances of this case; Mr. Rutstein is a foreign citizen in a foreign country who has shown himself to be continually incapable of complying with any procedural rules or Court orders, hence the default in the case [ECF No. 138]. For these reasons, without foreclosing the possibility of entertaining such relief in the future, the Court declines Plaintiff's request for a criminal contempt order to show cause.

**III.  Sealing of Certain Portions of Plaintiff's Motion for Default Judgment as to Damages**

In its Amended Motion for Leave to File Under Seal Certain Portions of Plaintiff's Motion for Default Judgment as to Damages, Plaintiff seeks to seal the following information: "(1) the amount of [Plaintiff's] projected future lost revenues and projected future lost profits; (2) details regarding [Plaintiff's] incremental costs, broken down by category of expenses; and (3) personally identifying information of non-parties to this suit" [ECF No. 219 p. 3]. The Court finds that these requests are narrowly tailored to the unique needs of this particular case, and good cause exists to keep this information sealed based on Mr. Rutstein's continual attempts to harm Plaintiff. With respect to Plaintiff's request to keep its projected future lost revenues and projected future lost profits sealed, this information should be kept shielded from public view because (1) competitors and potential wrongdoers, including Mr. Rutstein, could utilize this information to further harm Plaintiff; and (2) Plaintiff is not seeking future lost profits in this case. This same rationale applies to the details regarding Plaintiff's incremental costs and the personally identifying information of

non-parties. Mr. Rutstein's actions during this lawsuit establish a strong likelihood that, if the personally identifying information were made public, Mr. Rutstein would utilize this information to continue to harass those associated with Plaintiff. Accordingly, Plaintiff shall file in redacted form the information located in the table of its Amended Motion to Seal [ECF No. 219 pp. 4–5].

## CONCLUSION

For the foregoing reasons it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Default Final Judgment as to Damages against Defendants David Rutstein and NAAIP [ECF Nos. 189, 194] is **GRANTED IN PART** as indicated in this Order.

    a. The Court hereby entered a damages award of $15,930,974.60 against Defendants David Rutstein and NAAIP.

    b. The Court also imposes a fine against Defendant David Rutstein in the amount of $43,400, representing the accumulation of 217 days of non-compliance since the Court entered its Contempt Order on January 13, 2023 [ECF No. 158].

    c. In light of Plaintiff's Amended Motion for Attorneys' Fees [ECF No. 221], the instant Motion [ECF Nos.189, 194] is **DENIED AS MOOT** to the extent it seeks attorneys' fees and costs.

2. Plaintiff's Motion for Order to Show Cause as to Why Defendant David Rutstein Should Not Be Held in Criminal Contempt [ECF No. 211] is **DENIED**.

3. Plaintiff's Amended Motion to Seal Certain Portions of Plaintiff's Motion for Default Judgment as to Damages [ECF No. 219] is **GRANTED**.

4. **<u>Permanent Injunctive Relief</u>**: This Court issues a Permanent Injunction against Defendants David Rutstein, Mindy Rutstein, and NAAIP, and all officers, directors, employees, agents, subsidiaries, and all persons acting in concert and participation with Defendants, hereby permanently restraining and enjoining them from (1) engaging in the unlawful practice of insurance; (2) making false and disparaging statements about FFL verbally, on social media platforms, by email, direct message, or otherwise, including to state and federal regulators; (3) contacting independent contractor insurance agents ("Agents") without their consent, including through extorting them; (4) maintaining or posting content on NAAIP.org or any of NAAIP's social media accounts; (5) harassing FFL-affiliated Agents; and (6) soliciting FFL-affiliated Agents.  The Court further orders Defendants to dismantle the NAAIP website and discontinue the 6-day-per-week conference calls.  The court also requires Defendants to delete all existing social media communications and videos available online or elsewhere discussing FFL.  For additional clarify, Defendants David Rutstein and NAAIP are prohibited from engaging in any of the above-named activities through accounts controlled by Mindy Rutstein or anyone else.

5. **<u>Additional Equitable Relief</u>**:  In order to give practical effect to the Permanent Injunction, and considering the Defendants' disregard of the Preliminary Injunction [ECF Nos. 138, 158], the Court orders the following:

    a. The websites listed in the table below are hereby ordered to be immediately taken down and disabled.  As discussed further below, the following Internet platforms and service providers (all "Service Providers) are not meant to be exhaustive, including in the event that Defendants migrate or create new content that violates the permanent injunction in paragraph two (2).  For further clarity, this Order is not

limited to websites "hosting" content, but rather applies to any entity that is enabling the existence of the websites on which Defendants are posting illegal content, including domain names, ISP providers, and web content hosts.

| Internet Platform | Title of Page or Channel | Web Link / URL |
|---|---|---|
| Various, including but not limited to Cloudfare/Go Daddy | NAAIP website | https://www.naaip.org/ |
| Facebook | Aaron Levy (formerly Johnathan Meir (formerly Mindy Rutstein)) | https://www.facebook.com/groups/246959460995/user/100046072960854 |
| | NAAIP | https://www.facebook.com/naaip.org |
| | NAAIP Group | https://www.facebook.com/groups/246959460995/user/100064119691550/ |
| | Insurance Agents Marketing with NAAIP Group | https://www.facebook.com/groups/naaipagents |
| Youtube | NAAIP Channel | https://www.youtube.com/c/NaaipOrg |
| Twitter | NAAIP | https://twitter.com/naaipagents |
| LinkedIn | Jonathan Meir | https://www.linkedin.com/in/jonathan-meir-66b080142/ |

b. Plaintiff may serve this Permanent Injunction on the persons and entities providing service to Defendants or their associates (including domain name registrars, name servers, web hosting services, and any service providers). The Court further orders that any person or entity providing service to Defendants who is served with this Order shall take reasonable best efforts to implement the following actions:

    i. Completely, and until further order of the Court, suspend all services to Defendants and Defendants' representatives or resellers associated with such identified domains and IP addresses;

    ii. Refrain from providing any notice or warning to, or communicating in any way with Defendants or Defendants' representatives until the steps required by this Order are fully executed in full, except as necessary to communicate with hosting companies, data centers, or other Internet Providers to execute this Order;

    iii. Not enable any circumvention of this Order by Defendants or Defendants' representatives or resellers to rent, lease, purchase, or otherwise obtain other domains and IP addresses; and

    iv. Provide reasonable assistance in implementing the terms of this Order and take no action to frustrate the implementation of this Order.

6. The Clerk **SHALL MAIL** a copy if this Order to Defendants David and Mindy Rustein at the addresses listed below.

7. Final Judgment will be entered separately.

    **DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 18th day of August 2023.

                                                   **AILEEN M. CANNON**
                                                   **UNITED STATES DISTRICT JUDGE**

CASE NO. 22-80243-CIV-CANNON

cc:  David Rutstein
Bee Rav Yaacov 15
Jerusalem 94308
Israel
Email: david.rutstein@gmail.com
PRO SE

Mindy Rutstein
Bee Rav Yaacov 15
Jerusalem 9430806
Israel
Email: mindy.rutstein.lawsuit@gmail.com
PRO SE